# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

    Plaintiff,

    v.                                              No. 1:18-cr-2939-WJ

RICHARD CHRISTOPHER JOJOLA,

    Defendant.

## MEMORANDUM OPINION AND ORDER ON THE ADMISSIBILITY OF THE COCONSPIRATOR STATEMENTS THE UNITED STATES INTENDS TO INTRODUCE AT TRIAL PURSUANT TO FED. R. EVID. 801(D)(2)(E)

**THIS MATTER** is before the Court resulting from the *James* hearing the Court held on June 30, 2020 and July 14, 2020 on the admissibility of the coconspirator statements the United States intends to introduce at trial pursuant to Fed. R. Evid. 801(d)(2)(E). Defendant is charged with Felony Murder; Conspiracy to Commit Hobbs Act Robbery; Hobbs Act Robbery; and Using, Carrying, Brandishing, and Discharging a Firearm During and in Relation to a Crime of Violence.[1] At the *James* hearing, the Court heard testimony from FBI Special Agent Robinson, received three exhibits from the United States, and heard argument from counsel concerning the admissibility of the coconspirator statements the United States intends to introduce at trial. As explained in this Opinion, the Court finds that of the four statements the United States intends to introduce at trial, three are admissible as coconspirator statements pursuant to Fed. R. Evid. 801(d)(2)(E) and one is admissible as a statement made by the opposing party pursuant to Fed. R. Evid. 801(d)(2)(A).

Before admitting coconspirator statements pursuant to Fed. R. Evid. 801(d)(2)(E), the

---

[1] Jason Abeita and Michael Abeita were charged as codefendants, and both have plead guilty. Doc. 64 (Jason Abeita's Guilty Plea Hearing Minutes); Doc. 99 (Michael Abeita Guilty Plea Hearing Minutes).

"court must determine that (1) by a preponderance of the evidence, a conspiracy existed, (2) the declarant and the defendant were both members of the conspiracy, and (3) the statements were made in the course of and in furtherance of the conspiracy." *United States v. Owens*, 70 F.3d 1118, 1123 (10th Cir. 1995) (quoting *United States v. Urena*, 27 F.3d 1487, 1490 (10th Cir. 1994)). "[I]n deciding whether the offering party has satisfied its burden at a *James* hearing, the district court has the discretion to consider any evidence not subject to a privilege, including both the coconspirator statements the government seeks to introduce at trial and any other hearsay evidence, whether or not that evidence would be admissible at trial." *Id.* at 1124. That said, there must "be some independent evidence linking the defendant to the conspiracy. . . . However, such independent evidence may be sufficient even though it is not 'substantial.'" *Id.* at 1124–25 (citations omitted); *see* Fed. R. Evid. 801 (d)(2) ("The statement must be considered but does not by itself establish . . . the existence of the conspiracy or participation in it under (E).").

**I.    A Conspiracy Existed and Defendant, Jason Abeita, and Michael Abeita were Members of the Conspiracy**

"To prove conspiracy, the government must show: (1) that two or more people agreed to violate the law, (2) that the defendant knew at least the essential objectives of the conspiracy, (3) that the defendant knowingly and voluntarily became a part of it, and (4) that the alleged coconspirators were interdependent." *United States v. Small*, 423 F.3d 1164, 1182 (10th Cir. 2005) (citing *United States v. Evans*, 970 F.2d 663, 668 (10th Cir. 1992)).

At the *James* hearing, the United States established by a preponderance of the evidence that a conspiracy existed and that Defendant, Jason Abeita, and Michael Abeita were members of the conspiracy. The United States did so relying on independent evidence (i.e., evidence separate from the coconspirator statements at issue): Agent Robinson's testimony [Docs. 152 and 153], Michael Abeita's handwritten statement [United States Exhibit 1], the factual admissions in

Michael Abeita's plea agreement [United States Exhibit 2], and Michael Abeita's guilty plea transcript [United States Exhibit 3]. The strongest evidence of the conspiracy and Defendant, Jason Abeita, and Michael Abeita's participation in it came from Michael Abeita's statement:

> On the 6th of February 2018, I was standing outside of my grandma's house. Jason [Abeita] walked up and started to talk to my Uncle Cruz about meth and will be back, that he was tired of Ronald [Moquino] and wanted to rob him. My brother Richard [Jojola] wanted $20 of meth. Richard asked Jason if he can get him some. Jason said yes and said he's tired of Ronald and wants to rob him. Richard said, "let's go rob him." Then Jason said, "let's go then." Then Richard and Jason went to the back yard and got high. Then they came back and Jason, Richard and I went walking to Ronald's. We got there and Jason said, "Give me 5-10 minutes. I'll let you know when to come in." Jason went inside and came back out 10 min later. Let Richard know how and when to go so Jason went back inside and some guy came outside. Then Richard shot at him. He took off running.
>
> Then Richard went in the house. I followed him in and he and Jason started fighting. Then Richard shot Jason. Jason fell and then Richard started to shoot Ronald. Ronald tried to go in the bathroom but Richard shot through the door. Ronald fell. Richard opened the door then stepped over Ronald and shot him in the head. While this was going on I was by the back door going through the backpack that that Jason said the drugs and money are in. I looked through it and found nothing. Richard had ran through the house looking for the drugs and money. I could hear a woman yelling saying, "I called the cops, get out."
>
> Then Richard ran back to the door I was standing at and said, "let's go," so we ran to my aunt's house and asked her for a ride to my friend Sonya's house and she took us and we got to her house. Then Sonya called my friend Daiveon to get us a ride. Then he called my friend Ethan. He came to Sonya's to pick us up. Then Ethan dropped me off at Presbyterian Hospital where my girlfriend was having my son.
>
> The guns that Richard used to shoot them with was a revolver silver .22 and a .38 or .40 black revolver.

Michael Abeita's statement, by itself, sufficiently established the existence of the conspiracy and Defendant, Jason Abeita, and Michael Abeita's participation in it by a preponderance of the evidence. Notwithstanding that, Agent Robinson's testimony at the *James* hearing concerning his investigation of the case corroborated Michael Abeita's statement: Agent Robinson, for example, testified that after the incident at Ronald Moquino's house, Defendant

3

went to visit Sabrina Martinez (the mother of Defendant's children) and told her that "he was leaving town because he had shot and killed his cousin because he had stabbed him with a needle, and that his brother had shot another man." Doc. 152 (*James* Hearing Transcript) at 23.

Defendant argued at the *James* hearing that the independent evidence the United States relied on to establish the conspiracy and Defendant, Jason Abeita, and Michael Abeita's participation in it was not reliable and, as such, should not be considered. Doc. 153 (*James* Hearing Transcript) at 17–19. For example, Defendant explained that "a lot of what Michael Abeita says doesn't make sense" and that "there isn't corroborating evidence." *Id.* at 18. At this stage of the case, however, the Court is not convinced that the independent evidence is unreliable, especially considering Defendant's own statement to Sabrina Martinez corroborated the existence of the conspiracy and his participation in it as described in Michael Abeita's statement. Moreover, Michael Abeita attested to the veracity of the facts in his statement under oath at his guilty plea.

Based on the evidence the United States offered at the *James* hearing, the Court finds by a preponderance of the evidence that a conspiracy existed: (1) Defendant, Jason Abeita, and Michael Abeita agreed to violate the law by agreeing to rob Ronald Moquino of his drugs and money; (2) they knew at least the essential objectives of the conspiracy; (3) they each knowingly and voluntarily became a part of the conspiracy; and (4) they were interdependent, in that they worked together to execute the conspiracy. *See Small*, 423 F.3d at 1182 (stating the four elements required to prove conspiracy). In accordance with *Owens*, the Court also finds by a preponderance of the evidence that Defendant, Jason Abeita, and Michael Abeita were members of the conspiracy.

**II.     The Statements the United States intends to Introduce at Trial were made in the Course of and in Furtherance of the Conspiracy**

"Statements by a conspirator are in furtherance of the conspiracy when they are 'intended to promote the conspiratorial objectives.'" *United States v. Townley*, 472 F.3d 1267, 1273 (10th

Cir. 2007) (quoting *United States v. Reyes*, 798 F.2d 380, 384 (10th Cir. 1986)). The coconspirator statements the United States intends to introduce at trial pursuant to Fed. R. Evid. 801(d)(2)(E) are:

1. Jason Abeita said to Defendant: "I'm tired of Ronald, and I want to rob him."

2. Defendant responded to Jason Abeita: "Let's go rob him."

3. Jason Abeita then said to Defendant: "Let's go then."

4. While outside of Ronald Moquino's house, Jason Abeita said the following to Michael Abeita and Defendant: "Give me 5–10 minutes. I'll let you know when to come in."

Doc. 144 (United States' Supplemental Brief) at 2–3; *see* Doc. 153 (*James* Hearing Transcript) at 16–17 (Defendant identifying the statements at issue); *see also id.* at 20–21 (the United States explaining that "[t]here's only a couple of statements that these guys made to each other that were part of the conspiracy. They are as [Defendant] has outlined, those four statements").

The first, third, and fourth statements, identified above, were made by a coconspirator, during execution of the conspiracy, and were intended to promote the objectives of the conspiracy: rob Ronald Moquino of his drugs and money. Accordingly, the Court finds that they were made in the course of and in furtherance of the conspiracy and, therefore, are admissible as coconspirator statements pursuant to Fed. R. Evid. 801(d)(2)(E).[2] The second statement, however, was made by Defendant; as such, the Court finds that it is not admissible as a coconspirator statement but is admissible as a statement made by an opposing party pursuant to Fed. R. Evid. 801(d)(2)(A).

## CONCLUSION

For the foregoing reasons, the Court finds that the United States has established by a preponderance of the evidence that a conspiracy existed; Defendant, Jason Abeita, and Michael Abeita were members of the conspiracy; and the statements the United States intends to introduce

---

[2] Defendant did not contest whether the coconspirator statements the United States intends to introduce at trial pursuant to Fed. R. Evid. 801(d)(2)(E) were made in the course of and in furtherance of the conspiracy.

at trial were made in the course of and in furtherance of the conspiracy. *See Owens*, 70 F.3d at 1123 (stating the three requirements for admitting coconspirator statements under Fed. R. Evid. 801(d)(2)(E)). Of the four statements (identified in the previous section of this Opinion), three are admissible as coconspirator statements pursuant to Fed. R. Evid. 801(d)(2)(E) and one is admissible as a statement made by the opposing party pursuant to Fed. R. Evid. 801(d)(2)(A).

**IT IS SO ORDERED**.

_____
**CHIEF UNITED STATES DISTRICT JUDGE**